IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| COMPREHENSIVE HEALTH CARE SYSTEMS OF PALM BEACHES, INC., *Individually and as the representative of a class of similarly situated persons*, <br><br>Plaintiff, <br><br>v. <br><br>VITAMINERALS VM/ORTHOPEDICS, LTD., *et al*., <br><br>Defendants. | CASE NO. 5:16CV2183 <br><br><br><br><br><br>MAGISTRATE JUDGE KATHLEEN B. BURKE <br><br><br><br>**MEMORANDUM OPINION & ORDER** |

Plaintiff Comprehensive Health Care Systems of Palm Beaches, Inc. ("Plaintiff") brings this alleged class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227,[1] based on its receipt of two unsolicited faxes, copies of which are attached to the Amended Class Action Complaint as Exhibits A and B. Docs. 43-1 and 43-2. The faxes urge the recipient to purchase products listed in the faxes from Defendant Vitaminerals ("Vitaminerals" or "VM") and they provide contact information for Vitaminerals. BioFreeze, a product manufactured by Defendant Hygenic Corporation ("Hygenic"), is prominently featured in the faxes, although other types of healthcare products sold by Vitaminerals are also listed.

Hygenic has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Doc. 45. The Motion has been fully briefed.[2] The issue raised by Hygenic's Rule 12(b)(6) Motion is whether the Amended Complaint sufficiently states a claim pursuant to which Hygenic may be

---

[1] Plaintiff also alleges a state law claim for conversion bases on the same alleged facts.

[2] Plaintiff filed a response (Doc. 53) and Hygenic replied (Doc. 56).

1

held liable under the TCPA as a "sender" of the faxes despite the absence of any factual allegations indicating that it either transmitted the faxes, authorized Vitaminerals to do so, or even knew of the faxes.  In other words, the issue is whether the TCPA imposes strict liability on a manufacturer whose product is featured in an unsolicited fax despite the lack of any involvement by the manufacturer in the transmittal of the fax.  For the reasons explained below, the Court holds that the TCPA does not impose such liability.  The Court **DENIES** Hygenic's motion under Rule 12(b)(1) but **GRANTS** Hygenic's motion under Rule 12(b)(6).

## I. Background

BioFreeze is a topical analgesic manufactured by Hygenic.  Doc. 45-1, p. 5 (Hygenic's motion).  Plaintiff received two one-page fax advertisements, one on October 2015 and one on January 2016, that urged Plaintiff to contact "Bud Boote's VM Medical/Vitaminerals" to purchase BioFreeze at a discounted price.  Doc. 43, pp. 3-4, ¶15-19 (Amended Complaint); Docs. 43-1, 43-2 (advertisements); Doc. 45-1, p. 5.  The faxes also listed other products VM had for sale.  Docs. 43-1, 43-2.  Plaintiff "did not expressly invite or give permission to anyone to send" the faxes.  Doc. 43, ¶21.

Plaintiff, a Florida corporation, originally filed this suit in the Southern District of Florida.  Doc. 1.  Hygenic filed a Motion to Dismiss, arguing that Plaintiff failed to allege facts sufficient to establish personal jurisdiction over Hygenic in Florida and, in the alternative, a motion to transfer venue to the Northern District of Ohio—Hygenic's principal place of business is in Ohio and VM is an Ohio corporation.  Docs. 19-1, ¶2; 47, ¶6.  Plaintiff filed a motion for leave to file an amended complaint to cure deficiencies in the complaint identified by Hygenic and a notice stating that it did not oppose a transfer to the Northern District of Ohio.  Docs. 26, 28.  The case was transferred to the Northern District of Ohio on August 31, 2016.  Doc. 31.

Thereafter, Plaintiff filed a renewed Motion for Leave to File First Amended Class Action Complaint. Tr. 42. It asserted that Hygenic's prior motion to dismiss argued that Plaintiff had not alleged sufficient facts to establish TCPA liability, and that, "Consequently, Plaintiff's proposed First Amended Class Action Complaint adds allegations that Hygenic is a sender of the faxes at issue because its products are advertised or promoted in the advertisement, and that Hygenic, as the manufacturer of BioFreeze, benefits from the promotion and sale of its products." Doc. 42, p. 2, ¶10. This Court granted Plaintiff's motion and Plaintiff filed its Amended Class Action Complaint. Doc. 43. The Amended Complaint alleges that VM and Hygenic are each liable under the TCPA because: they sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on Hygenic's behalf, or under general principles of vicarious liability, including actual authority, apparent authority, and ratification. *Id.*, ¶¶ 54-55. It alleges that VM benefitted from the advertisements because the advertisements were "marketing endeavors to increase its sales and profits" and that Hygenic benefitted from the advertisements because the advertisements promoted BioFreeze products and, as the manufacturer of BioFreeze, Hygenic profits from the sale of BioFreeze products. *Id.*, ¶¶ 56-57. Plaintiff also maintained its claim against Defendants for conversion.[3] *Id.*, pp. 15-16.

Hygenic's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6) argues that Plaintiff lacks standing to bring this case; fails to allege that Hygenic is a "sender" under the TCPA; and fails to state a claim that Hygenic is liable for conversion.

## II. Legal Standard

### A. 12(b)(1) standard

---

[3] Plaintiff does not identify the source of its conversion claim, i.e., whether it is based on Ohio law or Florida law.

Although not entirely clear, it appears that the portion of Hygenic's motion asserted under Rule 12(b)(1) pertains to the issue of standing.  *See Kal Kan Foods, Inc. v. Iams Co.*, 197 F.Supp.2d 1061, 1065-1069 (S.D.Ohio 2002) (explaining that the issue of standing is properly considered by a court at the pleading stage in a Rule 12(b)(1) motion challenging the court's subject matter jurisdiction).  To establish Article III standing, a plaintiff must demonstrate: (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," because the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Id*. at 561.

### B. 12(b)(6) standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations of a pleading must be enough to raise a right to relief above the speculative level.  *Twombly*, 550 U.S. at 555.  The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id*.  "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

4

will not do." *Id*. (internal quotation marks omitted).  In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677 (quoting Fed. R. Civ. P. 8(a)(2)).  A defendant is entitled to "fair notice of what the . . . claim is and the ground upon which it rests." *Twombly*, 550 U.S. at 570 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While great detail is not required, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555; *see also Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp.2d 914, 924–25 (N.D. Ohio 2009) (citing and relying on *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008) and *Erickson v. Pardus*, 551 U.S. 89 (2007) for the proposition that specific facts are not necessary)).

### III. Analysis

#### A. Plaintiff has standing to sue under the TCPA

The TCPA "prohibits the use of 'any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement,' unless the sender and recipient have 'an established business relationship,' the recipient voluntarily made its fax number available, and the unsolicited fax contains a notice meeting certain statutory and regulatory requirements." *Bridging Cmtys., Inc. v. Top Flite Fin., Inc*.,—F.3d—, 2016 WL 7241401, at *1 (6th Cir. Dec. 15, 2016) (quoting 47 U.S.C. § 227(b)(1)(C), (b)(2)(D); 47 C.F.R.

5

§ 64.1200(a)(4)).  The statute creates a private right of action for a plaintiff to enjoin a TCPA violation and/or recover money lost as a result of the violation or $500 per violation, whichever is greater.  *Id*. (citing 47 U.S.C. § 227(b)(3)).  Treble damages are available if the TCPA violation was willful or knowing.  *Id*.

Hygenic argues that Plaintiff does not have standing to bring its claims against Hygenic because it does not allege facts sufficient to show that its injury is "fairly traceable to the challenged action" of Hygenic.  Doc. 45-1, p. 14 (quoting *Lujan*, 504 U.S. at 560).  The question of standing, however, is concerned with whether Plaintiff has alleged sufficient injury to bring this lawsuit, which it has done, *see Imhoff Investment, L.L.C., v. Alfoccino, Inc*., 792 F.3d 627, 631-634 (6th Cir. 2015),[4] and not whether the allegations in the Amended Complaint against Hygenic meet the pleading requirements of Fed. R. Civ. P. 8, which is the focus of Hygenic's argument.  In the Amended Complaint, Plaintiff alleges facts demonstrating that its injury is fairly traceable to the challenged action of Hygenic sufficient to establish Article III standing in this Court.  *See Lujan*, 504 U.S. at 561 ("[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice" because the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim.").  What Hygenic disputes is the sufficiency of the allegations in the Amended Complaint against it as a "sender" liable under the TCPA.  The Court considers Hygenic's insufficient pleading arguments in the context of its 12(b)(6) motion, discussed below.  Hygenic's motion to dismiss pursuant to Rule 12(b)(1) based on standing, therefore, is denied.

### B.  Plaintiff fails to state a claim against Hygenic under the TCPA because it does not sufficiently allege that Hygenic is a "sender" of the faxes

---

[4] The *Imhoff* Court found that a plaintiff suffers an injury sufficient for Article III standing when it receives unsolicited fax advertisements.  792 F.3d at 633.

The TCPA creates liability in the sender of improper, unsolicited fax advertisements.  47 U.S.C. § 227(b)(1)(C).[5]  The regulations promulgated by the Federal Communications Commission ("FCC") defines the "sender" of a fax advertisement as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."  47 C.F.R. § 64.1200(f)(10).  The regulations also define a "broadcaster" as "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee."  § 64.1200 (f)(7).

In its Amended Complaint, Plaintiff alleges generally that Defendants violated the TCPA.  Specifically, it asserts that Hygenic (as well as VM) is liable under the TCPA because it "sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, it is a sender of the fax advertisements because its goods or products are promoted in the faxes, or under general principles of vicarious liability, including actual authority, apparent authority, and ratification."  Doc. 43, ¶ 55.  It alleges that Hygenic benefitted from the advertisements because the ads promoted its product, BioFreeze.  *Id.*, ¶ 57.

Hygenic submits that these allegations are insufficient to state a claim that Hygenic is liable under the TCPA because the Amended Complaint generically lumps all Defendants together and because the only allegations made specifically against Hygenic are merely conclusory allegations and statutory quotations.  Doc. 45-1, p. 10.  It asserts, "Plaintiff's only factually-supported theory of liability is this: because Hygenic manufactured BioFreeze® topical analgesic, it is therefore responsible for the transmission of any fax bearing a picture of that product, regardless of whether it participated in, approved of, or was even aware of such faxes."

---

[5] "It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement[.]"  47 U.S.C. § 227(b)(1)(C).

7

*Id*. It states that this "sweeping theory of liability has been rejected by federal courts nationwide" and should be rejected by this Court. *Id*.

Plaintiff retorts that the fact that VM sells BioFreeze creates a "reasonable inference" that VM and Hygenic have a business relationship and that, in any event, the TCPA imposes strict liability on the entity whose goods and services are advertised in an improperly sent fax. Doc. 53, pp. 12-13. In support of its contention, Plaintiff relies on two Sixth Circuit published cases, *Siding and Insulation Co. v. Alco Vending, Inc*., 822 F.2d 886 (6th Cir. 2016), and *Imhoff Investment, supra*, 792 F.3d 627. *Id*., pp. 12-15. The facts in those cases, however, are not analogous to the facts in this case and do not support the conclusion that Plaintiff advocates.

In *Siding*, the defendant company, Alco, sold and stocked vending machines. It paid a company called B2B to send out fax advertisements to potential customers. 822 F.3d at 888-889. B2B was in the business of transmitting fax advertisements for paying customers, i.e., it was a "broadcaster" as defined in the regulations.[6] *Id*. The plaintiffs, recipients of the faxes, filed suit against Alco alleging a violation of the TCPA. The Sixth Circuit reversed the district court's grant of summary judgment to Alco, finding that Alco could face liability under the TCPA because B2B transmitted the faxes on Alco's behalf. The court applied the "on-whose-behalf" analysis that governed at the time the faxes were sent, in 2005 and early 2006. *Id*. at 897-898. The court explained that, in August 2006, the FCC modified the definition of "sender" to read not just the entity on whose behalf the faxes were sent, but to also include the entity whose goods or services are advertised or promoted in the advertisement. *Id*. The court noted that, per the regulations, the entity on whose behalf the advertisement is sent "*[i]n most instances* [] will be

---

[6] B2B is a "fax-blaster," a company that procures a wide range of clients and faxes those client's advertisements to thousands of fax numbers. *See Bridging Comts*.,—F.3d—, 2016 WL 7241401, at *1.

the entity whose product or service is advertised or promoted in the message." *Id*., at 893 (emphasis in original) (quoting Junk Fax Regulations, 21 FCC Rcd. 3787, 3808 (2006)).

In *Imhoff*, the defendant restaurant paid B2B (the same broadcaster company involved in *Siding*), to send out fax advertisements.  792 F.3d at 629-630.  While B2B sent some faxes to recipients who had consented to receive them, it sent other faxes to recipients who had not consented to receive them.  The non-consenting recipients filed a complaint alleging that the restaurant violated the TCPA.  The question before the court was whether the restaurant could be a "sender" and, therefore, liable under the TCPA for the faxes that B2B, the broadcaster, transmitted.  *Id*. at 634-635.  The court reasoned that the restaurant was directly liable because it was a "sender" of the faxes, its goods and services having been advertised or promoted in the unsolicited advertisement.  *Id*.  It rejected the restaurant's argument that the "sender" could only be the entity that actually transmitted the fax, i.e., the broadcaster.  *Id*. at 637.

This case does not involve B2B or another, similar broadcaster company that is paid by a defendant to engage in widespread "fax-blasting."  Plaintiff does not allege that VM is a "broadcaster" as that term is defined in the regulations.  It does not allege that Hygenic paid VM to send fax advertisements on Hygenic's behalf, as was the case in *Imhoff* and *Siding*.  *See* 47 § C.F.R. § 64.1200(f)(10) ("sender ... means the person or entity on whose behalf a facsimile unsolicited advertisement is sent").  And, although Hygenic's BioFreeze products appear in VM's advertisement, VM's faxes, which are attached to the Amended Complaint,[7] make clear that the goods and services being advertised are those of VM.  *See id*. ("sender" ... means the person or entity ... whose goods or services are advertised or promoted in the unsolicited advertisement.").  VM's faxes urge the recipient who wishes to purchase BioFreeze at a special

---

[7]  Plaintiff attached two fax advertisements it received to its Amended Complaint and to its opposition brief.  Doc. 43, ¶16; 43-1; 43-2; 52, pp. 8, 9.  The Court may consider these advertisements because they were referenced in Plaintiff's Amended Complaint and are central to its claims.  *See Bassett*, 528 F.3d at 430.

9

price to contact VM ("Bud Boote's VM Medical/Vitaminerals"); they include VM's Ohio address and its toll-free number;[8] and they list healthcare products not manufactured by Hygenic that VM purports to sell, such as TENS machines, vitaminerals, hot/cold packs, orthopedic supports, cervical pillows, and another product called "Sombra." Docs. 43-1, 43-2. Thus, the faxes hold out VM as a seller of products, i.e., its goods and services are advertised and promoted. In short, VM, as alleged in the Amended Complaint, fits the bill of "sender" as that term is defined in 47 § C.F.R. § 64.1200(f)(10).

Plaintiff contends that Hygenic is also a "sender" per the regulations because Hygenic manufactures BioFreeze. It argues that such an interpretation of the word "sender" was endorsed in *Imhoff* and *Siding*. Doc. 53, pp. 14-15. The Court disagrees. The *Imhoff* and *Siding* courts did not consider the factual scenario in this case and neither case directs a finding in favor of Plaintiff on these facts. Indeed, such a result would be absurd. In the context of *Siding*, for instance, it would be akin to a court finding that the vending machine company's advertisement creates TCPA liability for the soft drink companies whose drinks are sold in the vending machines and are promoted in the ads because the soft drink companies manufacture the drinks and benefit when customers buy their products. If this were the case, TCPA liability would automatically attach to any manufacturer or distributor of any product promoted in an improperly sent fax advertisement. The history and the language of the TCPA and the pertinent regulations do not create such liability; nor does binding case law or common sense. If such a broad reading of Plaintiff's definition of "sender" were applied by courts, entities could engage in "sabotage liability":

> By way of illustration, it would allow a rabid Tampa Bay Buccaneers fan—with a rhino helmet, red face paint, and an undying devotion to the organization—to trigger *per se* liability for the organization under the TCPA by gratuitously, and without directive from

---

[8] The faxes contain no contact information for Hygenic.

10

or notice to the organization, promoting season ticket sales via fax. The same could be true of a random individual in Boston, mind brewing with *scienter*, who works to implicate the New York Yankees by advertising their season tickets.[] Universal liability for complete inaction was not contemplated by Congress in passing the TCPA and does not appear to have been contemplated by the FCC in crafting and interpreting its regulations.

*Cin-Q Autos., Inc. v. Buccaneers Ltd. P'ship*, 2014 WL 7224943, at *6 (M.D. Fla., Dec. 17, 2014). *See also Bais Yaakov v. Varitronics*, LLC, 2015 WL 1529279, at *4-5 (D. Minn. April 3, 2015) (holding that the complaint failed to state a claim of TCPA liability when the fax advertisements merely promoted the defendant's products).[9]

In short, Plaintiff fails to allege that Hygenic is a "sender" as that term is defined by the regulations and fails to identify legal authority that would create TCPA liability in Hygenic under the facts alleged in the Amended Complaint. Instead, the Amended Complaint simply attempts to piggyback off VM's status as a "sender" and Hygenic's status as a manufacturer without any further factual allegations that would make Hygenic liable as a sender. *See Twombly*, 550 U.S. at 555 (courts need not accept as true legal conclusions couched as factual allegations and a formulaic recitation of the elements of a cause of action will not suffice). The fact that VM promoted Hygenic's products, without more, does not make Hygenic liable under the TCPA.

Plaintiff submits that, if the Court is inclined to grant Hygenic's motion, it should do so without prejudice "and provide Plaintiff an opportunity to amend the complaint in order to cure any deficiencies." Doc. 53, p. 11. This request is denied. The Amended Complaint is Plaintiff's

---

[9] The court in *Bais Yaakov* found that the plaintiff stated a claim for relief against the defendant based on the "on-whose-behalf" definition of "sender" because the complaint contained allegations supporting such a theory: the defendant's products are only sold through authorized dealers, the authorized dealer who transmitted the fax is the only authorized dealer of the defendant's products, and the defendant authorized the dealer to use its trade name and mark on its advertising on behalf of the defendant "only in the matter [sic] authorized by [the defendant]." 2015 WL 1529279, at *5. The Plaintiff's Amended Complaint in this case contains no similar allegations.

second complaint in this lawsuit and its third against VM and Hygenic overall.[10]  It has failed to allege allegations sufficient to maintain a TCPA claim against Hygenic because it apparently lacks sufficient factual support for such a claim, not because it did not artfully plead.  Dismissal, based on the facts alleged, is with prejudice.  If, however, Plaintiff learns of facts through discovery that would give rise to liability against Hygenic consistent with this Order (e.g., a business relationship between Hygenic and VM as discussed in footnote 9, *supra*), Plaintiff may seek leave of Court to file a Second Amended Complaint.[11]

### C.  Plaintiff fails to state a claim against Hygenic for conversion

Plaintiff's Amended Complaint includes a claim for conversion.  Doc. 43, pp. 15-16.  It alleges,

> By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' own use.  Where printed (as in Plaintiff's case), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use.  Defendants also converted Plaintiff's time to Defendants' own use, as they did with the valuable time of the other class members.

*Id.*, p. 15, ¶ 62.  Plaintiff does not identify any legal support for this claim.

Hygenic argues that, as with the TCPA claim, Plaintiff fails to allege factual allegations sufficient to support a conversion claim against Hygenic, under either Ohio state law or Florida state law.  Doc. 45-1, p. 13.  Plaintiff disagrees; it states that it alleged that the faxes were sent by Hygenic "under general principles of vicarious liability, or actual authority."  Doc. 53, p. 17 (citing ¶55 of the Amended Complaint).

First, the paragraph Plaintiff cites to for this purported allegation is in the TCPA claim set forth in its Amended Complaint, not in the conversion claim.  Moreover, Plaintiff's conversion

---

[10]  Plaintiff filed its first lawsuit against VM and Hygenic in the Southern District of Florida on June 1, 2016.  *See Comprehensive Health Care Systems, Inc. v. Vitaminerals VM/Orthopedics, Ltd., et al.*, Case No. 9:16-cv-80889.  It voluntarily dismissed the case on June 10, 2016.  *Id.*, Docs. 5, 6.

[11]  Any such motion for leave to amend must adhere to the Case Management Order, Doc. 52.

claim against Hygenic (referred to in the conversion claim collectively as "Defendants") fails for the same reasons its TCPA claim fails.  The elements of a conversion claim in Ohio are: 1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages.  *See NPF IV, Inc., et al. v. Transitional Health Servs., et al.*, 922 F.Supp. 77, 81 (S.D. Ohio 1996).  In Florida, conversion is "[a]n act of dominion wrongfully asserted over another's property inconsistent with [its] ownership therein."  *See Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.*, 125 F.Supp.2d 1092, 1099 (S.D. Fla. 2000).  Both states' laws, therefore, require an intentional or wrongful act on the part of the defendant and Plaintiff has failed to allege that Hygenic committed an intentional or wrongful act.  Accordingly, Plaintiff has failed to state a claim for conversion against Hygenic under either Ohio or Florida law.  This claim is dismissed.

### III. Conclusion

For the reasons stated above, Hygenic's Motion to Dismiss (Doc. 45) pursuant to Rule 12(b)(1) is **DENIED**; its Motion to Dismiss pursuant to Rule 12(b)(6) is **GRANTED**.

IT IS SO ORDERED.

Dated:  January 3, 2017

Kathleen B. Burke
United States Magistrate Judge